UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICK TROMBLEY, on Behalf of Himself, and
His Minor Children, H and N,
                              Plaintiff,

v.                                                          8:11-CV-0569
                                                            (GTS/CFH)

JOHN O'NEILL, Individually and as Comm'r of
Essex Cnty. Dep't of Soc. Servs.; JEFFERY
LETSON, Individually and as Essex Cnty. Dep't of
Soc. Servs. Child Protective Serv. Caseworker;
KIM MARIE, Individually and as Essex Cnty.
Foster Care Caseworker; and MICHAEL GALLANT,
Individually and as Attorney for Essex Cnty. Dep't of
Soc. Servs.,
                              Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

RICK TROMBLEY
  Plaintiff, *Pro Se*
Essex County Jail
Post Office Box 68
Lewis, New York 12950

TOWNE, RYAN & PARTNERS, P.C.                                CLAUDIA A. RYAN, ESQ.
  Counsel for Defendants                                    JOHN F. MOORE, ESQ.
450 New Karner Road
P.O. Box 15072
Albany, New York 12205

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action filed by Rick Trombley

("Plaintiff"), on behalf of himself and his minor children H and N, against John O'Neill, Jeffery

Letson, Kim Marie and Michael Gallant ("Defendants"), is Defendants' motion to dismiss

Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No.

19.) For the reasons set forth below, Defendants' motion is granted.

# I. RELEVANT BACKGROUND

## A. Plaintiffs' Complaint

Generally, construed with the utmost of special liberality, Plaintiff's Complaint asserts the following five claims against Defendants,[1] seeking damages only, arising from the removal of H and N from his custody: (1) a claim that Defendants Jeffery Letson ("Letson") and Michael Gallant ("Gallant") illegally entered Plaintiff's home without probable cause or a warrant and attempted to remove H and N in violation of his rights under the Fourth Amendment; (2) a claim that Defendants Letson, Gallant and John O'Neill ("O'Neill") filed a petition to remove H and N from Plaintiff's custody without grounds to do so in violation of his rights under the Due Process Clause of the Fourteenth Amendment; (3) a claim that Defendant Kim Marie ("Marie") discriminated against Plaintiff based on his gender during the custody evaluation in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment; (4) a claim that Defendants Marie and Gallant coerced Plaintiff into an admission of neglect in violation of his rights under the Due Process Clause of the Fourteenth Amendment; and (5) a claim that Defendants conspired to violate his constitutional rights. (*See generally* Dkt. No. 1 [Pl.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as follows: Plaintiff petitioned for temporary custody of his son, N, due to the alleged addiction problems of N's mother, "Korrin." (Plaintiff was already the custodial parent of H, who is not Korrin's child.) As a result, Family

---

[1]     Plaintiff's Complaint asserts several claims against Defendants as well as Derek Champagne, Franklin County District Attorney; John Delehanty, Franklin County Assistant District Attorney and Richard Meyer, Essex County Supreme and Family Court Judge. On November 23, 2011, this Court adopted the Report-Recommendation and Order of United States Magistrate Judge David R. Homer recommending that all claims against Derek Champagne, John Delehanty and Judge Meyer be dismissed. Thereafter, Defendants filed the current motion to dismiss the remainder of the claims asserted against them in the Complaint.

Court Judge Richard Meyer ("Judge Meyer") assigned Defendant Letson, a Child Protective Services Caseworker for Essex County Department of Social Services ("DSS"), to the case. On May 17, 2008, Plaintiff found Korrin using cocaine at their home, while caring for the children. A domestic incident ensued, after which both Plaintiff and Korrin were arrested. Upon his release from the police station, Plaintiff returned home with H and N. Korrin did not return to the home.

According to arrest records submitted by Plaintiff in response to the current motion, of which the Court takes judicial notice, Plaintiff was arrested on May 18, 2008 for Assault in the Third Degree and Endangering the Welfare of a Child. According to the information, Plaintiff was accused of intentionally striking Korrin with his open hand several times, resulting in a cut across Korrin's nose and swelling of her forehead above the eye. Also, Plaintiff was accused of doing so in the presence of H and N, where alcohol, and possibly narcotics, were involved. (*See* Dkt. No. 25 at 89-94 [Ex. N to Pl.'s Response to Defs.' Mot. to Dismiss].)

On May 19, 2008, Letson and a coworker appeared at Plaintiff's home with two State Troopers for the purpose of removing H and N from the home and placing them in foster care. Plaintiff requested several times that Letson, Letson's coworker and the two Troopers leave the home, but they refused. When Plaintiff attempted to leave the home with his sons, he was prevented with the threat of arrest. Finally, after two and a half hours, Letson, his coworker and the Troopers left.

On May 20, 2008, Plaintiff was summoned to Family Court on a Child Neglect Petition filed by DSS, after which H and N were placed in foster care. After H and N were placed in foster care, an order of protection was issued directing that Korrin stay away from the home and that both Plaintiff and Korrin follow the order. The order of protection was issued at the request

of Defendant Gallant.  Defendant Marie was assigned to assist both Plaintiff and Korrin with the foster care process, but Marie took the side of Korrin from the start.

Within a month, Korrin was allowed back into the home, with a new order of protection issued to both Plaintiff and Korrin.

On August 26, 2008, after Plaintiff was coerced by his attorney as well as by Defendants Gallant and Marie, Plaintiff made a general admission of neglect.  As a result, Plaintiff was subject to a year of supervision by DSS.

Pursuant to the August 21, 2008 Order of Family Court Judge Richard B. Meyer, Plaintiff's consent to the entry of an order of fact-finding without an admission was accepted, and the court found by a preponderance of the evidence that Plaintiff committed acts constituting child neglect of H and N.  Moreover, the court acknowledged that Plaintiff appeared with counsel, and that Plaintiff voluntarily, intelligently and knowingly consented to the entry of an order of a finding of neglect without admission.  (*See* Ex. L to Aff. of Michael Gallant, Dkt. No. 19-4.)

In November 2008, Korrin attacked Plaintiff in front of several witnesses, after which the police were called but no arrests were made.  Korrin reported the incident to her probation officer and Defendant Marie.  Thereafter, both Korrin and Plaintiff were arrested.  H and N were scheduled to return home on December 4, 2008, but as a result of the arrests, Defendant Marie and Judge Weyer would not allow it.

The following February, at the request of Defendant Marie, H was returned to the custody of his biological mother, "Jaime."

In May 2009, another incident occurred between Plaintiff and Korrin, after which the police were called, but no arrests were made.  Korrin reported the incident to Defendant Marie,

who contacted the police and advised them of the order of protection. Plaintiff was then arrested for first degree criminal contempt, a felony. At some point thereafter, Plaintiff was arrested for a misdemeanor-level criminal contempt related to the use of alcohol in violation of the order of protection. Plaintiff was eventually sentenced on May 17, 2010 to one year in jail for the misdemeanor charge.

In January 2010, ten days after Korrin completed an in-patient program, and at the request of Defendant Marie, Judge Weyer ordered that Korrin have custody of N. N remains in Korrin's care.

### B. Defendants' Motion

Generally, in support of their motion to dismiss the complaint, Defendants assert the following arguments: (1) Defendants are entitled to statutory, qualified and absolute immunity from Plaintiff's claims, and (2) even if Defendants are not immune, Plaintiff fails to plausibly state a claim against them because (a) Plaintiff's false arrest claim is barred by the statute of limitations, (b) even if not time-barred, Plaintiff's allegations that he was prevented from leaving his home with the threat of arrest does not plausibly state a claim for false arrest, (c) Defendants Letson and Marie have no authority to prosecute Plaintiff, (d) Plaintiff fails to allege any facts in support of a claim against Defendants in their official capacities, (e) Plaintiff's procedural and substantive due process rights have not been violated, (f) Plaintiff was not discriminated against, and (g) Plaintiff has failed to allege any personal involvement of Defendant O'Neill in any of the actions underlying his claims. (*See generally* Dkt. No. 19-28 [Defs.' Mem. of Law].)

Generally, in response to Defendants' motion, Plaintiff argues that (1) Defendants' immunity arguments should be denied in all respects and (2) Defendants' argument that Plaintiff's false arrest claim is untimely should be denied. Plaintiff does not respond to the

remaining of Defendants' arguments in support of their motion to dismiss. (*See generally* Dkt. No. 25 [Pl.'s Response].)

Generally, in reply to Plaintiff's response, Defendants argue that (1) they are entitled to statutory, qualified and absolute immunity; (2) Plaintiff's false arrest claim is untimely, subject to this Court's application of the "prisoner mailbox defense"; and (3) Defendants should prevail on the remainder of their arguments in support of their motion to dismiss because Plaintiff failed to contest them. (*See generally* Dkt. No. 30 [Defs.' Reply].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F.

Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice"

standard turns on the *plausibility* of an actionable claim. *Id*. at 556-70, 127 S. Ct. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]." *Id*. at 555, 127 S. Ct. at 1965, n.3. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 554, 127 S. Ct. at1965.[2]

      As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks

----

      [2]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added). That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*, at 678, 129 S. Ct. at 1949.

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[3] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[4] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28.

---

[3]    *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[4]    *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice[5] for the factual background of the case." *Planck v. Schenectady Cnty.*, No. 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint–to the extent those papers are consistent with the allegations in the complaint." *Planck*, 2012 WL 1977972, at *5.

## B. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See*

---

[5] *See also Continental Cas. Co. v. Marshall Granger & Co., LLP*, — F. Supp. 2d —, —, 2013 WL 372162, at *4 (S.D.N.Y. 2013) *(citing Sutton ex rel. Rose v. Wachovia Sec.*, LLC, 208 F. App'x 27, 29-30 (2d Cir.2006) (pleadings and court orders are "undisputably matters of public record"); *Global Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")); *Wingate v. Deas*, No. 11-CV-1000, 2012 WL 1134893, at *1, n.1 (E.D.N.Y. Apr. 2, 2012) (taking judicial notice of arrest record) (citing *Canessa v. Cnty. of Suffolk*, No. 09–CV–3256, 2010 WL 1438822 at *1 (E.D.N.Y. Apr. 10, 2010) (taking judicial notice of arrest record)).

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y. Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### C.      Legal Standards Governing Plaintiff's Claims

#### 1.      42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kregler v. City of New York*, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted)). A plaintiff may allege the personal involvement of a defendant who occupies a supervisory position by alleging that the defendant: "(1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in managing subordinates who caused

the unlawful condition or event; or (5) exhibited 'gross negligence' or 'deliberate indifference' to the constitutional rights of [the plaintiff] by having actual or constructive notice of the unconstitutional practices and failing to act." *Kregler*, 821 F. Supp. 2d at 655-56 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Wright*, 21 F.3d at 501).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability. However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify liability of the municipality. *Jones*, 691 F.3d at 81. Further, "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. " *Id.*

### a.      Fourth Amendment

The Fourth Amendment protects "the people" from "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons or things to be seized." U.S. CONST. AM. IV. A "seizure" occurs where, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v.*

*Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870 (1980). Fourth Amendment protections apply in the context of the seizure of a child by a government official during a civil child-abuse or neglect investigation. *See Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000). In such a context, a court order is the equivalent of a warrant. *See Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999).

"A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf." *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) (citing *Tenenbaum*, 193 F.3d at 601 n. 13.) However, depending on the circumstances in which a removal occurs, other Fourth Amendment claims might also be viable. For example, a claim that the child's parent was confined in the home on threat of arrest may allege interests protected by the Fourth Amendment. *See Clarke v. County of Broome*, No. 10-CV-399, 2012 WL 1005086, at *6-7 (N.D.N.Y. Mar. 23, 2012) (If "the encounter with the police occurs in the plaintiff's home, the Court must determine whether a reasonable person in the plaintiff's position would have felt that she was free to disregard the office[r] and leave her home without consequence.") (citing *Wray v. Painter*, No. 09-CV-5792, 2010 WL 889984, at *2 (E.D. Pa. Mar. 5, 2010); *Bodek v. Bunis*, No. 06-CV-6022L, 2007 WL 1526423, at *9 (W.D.N.Y. May 23, 2007)(citing *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382 (1991)); *U.S. v. Lee*, 916 F.2d 814, 819 (2d Cir.1980)).

The elements of a Fourth Amendment claim for false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See LaFrance v. Bemben*, No. 10-CV-4583, 2013 WL 132702, at *4 (E.D.N.Y. Jan. 10, 2013) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir.2003). Probable cause for the

seizure is a "complete defense" to a claim for false imprisonment. *See LaFrance*, 2013 WL

132702 at *4 (quoting *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)). "In false

imprisonment cases, the defendant has the burden to establish that a nonconsensual confinement

was privileged." *Fowler v. Robinson*, No. 94-CV-836, 1996 WL 67994, 10 -11 (N.D.N.Y. Feb.

15, 1996) (citing *Sindle v. New York City Transit Auth.*, 352 N.Y.S.2d 183, 186 (N.Y. 1973)).

### b.  Due Process

"The Fourteenth Amendment's Due Process Clause provides protection against

government interference with certain fundamental rights and liberty interests. A parent's interest

in the custody of a child is a Constitutionally protected liberty interest subject to due process

protection." *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 106

(N.D.N.Y. 2011) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267

(1997); *Tenenbaum*, 193 F.3d at 593).

### i.  Procedural Due Process

"The Fourteenth Amendment imposes a requirement that except in emergency

circumstances, judicial process must be accorded both parent and child before removal of the

child from his or her parent's custody may be effected." *Southerland* , 680 F.3d at 142 (citing

*Kia P.*, 235 F.3d at 759-60; *Tenenbaum*, 193 F.3d at 593-94; *Duchesne v. Sugarman*, 566 F.2d

817, 825-26 (2d Cir. 1977)). Accordingly, both parents and children may have a cause of action

for a violation of their right to procedural due process related to the child's removal from his or

her parent's custody.

### ii.  Substantive Due Process

A parent may also have a substantive due process claim related to the removal of his or

her child from his or her custody. "Parents have a substantive right under the Due Process

Clause to remain together with their children without the coercive interference of the awesome power of the state." *Southerland*, 680 F.3d at 142 (quoting *Tenenbaum*, 193 F.3d at 600) (internal quotation marks omitted)). This right, however, is "counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *McCaul v. Ardsley Union Free Sch. Dist.*, No. 12-CV-2300, 2013 WL 673751, at *1 (2d Cir. Feb. 26, 2013) (quoting *Southerland*, 680 F.3d at 152). A parent's substantive due process claim "can only be sustained if the removal of the child would have been prohibited by the Constitution even had the parent[] been given all the procedural protections to which [he] w[as] entitled." *Southerland*, 680 F.3d at 142 (quoting *Tenenbaum*, 193 F.3d at 600). Thus, "while a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of the removal itself." *Southerland*, 680 F.3d at 142 (citing *Bruker v. City of New York*, 92 F. Supp. 2d 257, 266-67 (S.D.N.Y.2000)).

"To state a claim for a violation of this substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *McCaul*, 2013 WL 673751, at *1 (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir.2011)).

### c.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws" ( see U.S. CONST. AM. XIV, § 1), "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985) ).

Ordinarily, "[t]o state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir.1999), overruled in part on other grounds by *Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (2002). However, "an individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the 'class of one' theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073 (2000)." *Young*, 705 F. Supp. 2d at 204-05.

"Under a 'class of one' equal protection claim, a plaintiff must allege that (1) '[he] has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" *Id.* (quoting *Willowbrook*, 528 U.S. at 564). "In order to state an equal protection violation under § 1983, 'it is axiomatic that plaintiff must allege that similarly situated persons were treated differently.'" *Id.* (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir.1994)).

## 2.    Conspiracy to Violate Plaintiff's Rights

To state a claim for conspiracy to violate one's constitutional rights under 42 U.S.C. § 1985(3), a plaintiff muse allege: (1) some class-based discriminatory animus underlying the defendant's actions; and (2) that the conspiracy was aimed at interfering with plaintiff's protected rights. *See Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (*citing Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753 (1993)).

In order to state a conspiracy claim under § 1983, a plaintiff must allege facts plausibly showing: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done

in furtherance of that goal causing damages." *Benitez v. Ham*, No. 9:04–CV–1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  "A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.  Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Fitzgerald v. City of Troy, N.Y.*, No. 10-CV-451, 2012 WL 5986547, at *23 (N.D.N.Y. Nov. 28, 2012) (citing *Malsh v. Austin*, 901 F. Supp. 757, 763-64 (S.D.N.Y. 1995)).

Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either § 1983 or § 1985(3).  *See Kiryas Joel Alliance v. Vill. of Kiryas Joel*, No. 12-217-CV, 2012 WL 3892744, at *5 (2d Cir. Sept. 10, 2012) (citing *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir.1999)); *Emmerling v. Town of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011).  Instead, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Kiryas Joel Alliance*, 2012 WL 3892744, at *5 (quoting *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003)).

According to the intra-corporate conspiracy doctrine, which applies to both §1983 and § 1985 conspiracy claims, *see Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.1978), "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Fitzgerald*, 2012 WL 5986547, at *23 (quoting *Jefferson v. Rose*, 869 F. Supp. 2d 312, 317-18 (E.D.N.Y.  2012) (quotations and citations omitted).  Where all alleged co-conspirators are employed by the same municipal entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim.  *See Fitzgerald*, 2012 WL 5986547, at *24 (citing *Baines v. Masiello*, 288 F. Supp. 2d 376, 394-95

(W.D.N.Y. 2003) (holding that a conspiracy claim brought against "the Common Council, the Mayor, and the City Clerk" was barred by the intra-corporate conspiracy doctrine); *Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (holding that conspiracy claims against the Village Board trustees, mayor, and former and current chief of police are barred by the intra-corporate conspiracy doctrine).

### D.     Legal Standards Governing Defendants' Defenses

#### 1.     Defense of Immunity

##### a.     Statutory Immunity

Section 419 of New York's Social Services Law provides for immunity to "[a]ny person, official or institution participating in good faith in the . . . removal or keeping of a child pursuant to this title . . . from any liability, civil or criminal, that might otherwise result by reason of such actions." N.Y. SOC. SERV. LAW § 419 (McKinney 2013). Section 419 further provides that

> [f]or the purpose of any proceeding, civil or criminal, the good faith of any such person, official, or institution . . . providing a service pursuant to section four hundred twenty-four . . . of this chapter shall be presumed, provided such person, official or institution was acting in discharge of their duties and within the scope of their employment, and that such liability did not result from the willful misconduct or gross negligence of such person, official or institution.

SOC. SERV. LAW § 419. Section 424 of the Social Services Law provides that each child protective service shall "take a child into protective custody to protect him from further abuse or maltreatment when appropriate and in accordance with provisions of the family court act." N.Y. SOC. SERV. LAW § 424(9) (McKinney 2013).

"Section 1024 of the New York Family Court Act . . . provides that a child may be removed, absent parental consent or a court order, if there is 'reasonable cause to believe that the child is in such circumstances or condition that his continuing in said place of residence or in the

care and custody of the parent ... presents an imminent danger to the child's life or health,' and there is insufficient time to obtain prior judicial authorization for the removal pursuant to Section 1022 of the Family Court Act." *Tenenbaum v. Williams*, 862 F. Supp. 962, 969-970 (E.D.N.Y. 1994), vacated on other grounds, 193 F.3d 581 (2d Cir. 1999), (quoting N.Y. FAM. CT. ACT § 1024).

### b. Quasi-Judicial Absolute Immunity

The New York Court of Appeals has recognized that a logical extension of absolute judicial immunity for judges is that "other neutrally positioned government officials, regardless of title, who are delegated judicial or quasi-judicial functions should also not be shackled with the fear of civil retribution for their acts." *Mosher-Simons v. Cnty. of Allegany*, 99 N.Y.2d 214, 219 (2002) (quoting *Tarter v State of New York*, 68 N.Y.2d 511, 518 (1986)).  *In Mosher-Simons*, the Court of Appeals granted quasi-judicial immunity to a DSS caseworker for negligent placement of a child, where she was performing a home study at the direction of Family Court to aid it in its placement decision.  *See id.*, 99 N.Y.2d at 220.  However, federal courts have held that absolute immunity on a § 1983 claim is only available where the defendant can show that his or her function "is 'so sensitive as to require a total shield from liability,' *Harlow v. Fitzgerald*, 457 U.S. 800, 812-13, 102 S. Ct. 2727, 2735 (1982), and that absolute immunity is 'essential' if that function is to be properly performed, *Butz v. Economou*, 438 U.S. 478, 506-07, 98 S. Ct. 2894, 2910-11 (1978)."  *Robison v. Via*, 821 F.2d 913, 919 (2d Cir. 1987).  Thus, where defendants, a state attorney and police officer, seized a child, without a court order, in pursuit of an investigation of child abuse, the court held that defendants' burden to show they were entitled to absolute immunity was not met.  *See Robinson*, 821 F.2d at 919-920.  *See also Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir.2006) (noting that "a government attorney is entitled only to qualified immunity when functioning in an administrative or investigative capacity").

##### c.    Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[6] "As the third part of the test provides, even where the law is 'clearly established'

---

[6]    *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70

(2d Cir. 2007) [citations omitted].[7]  This "objective reasonableness" part of the test is met if

"officers of reasonable competence could disagree on [the legality of defendant's actions]."

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986).[8]  As the Supreme Court has

explained,

> [T]he qualified immunity defense . . . provides ample protection to all but
> the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is obvious
> that no reasonably competent officer would have concluded that a warrant
> should issue; but if officers of reasonable competence could disagree on
> this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[9]

---

[7]     *See also Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034 (1987)
("[W]hether an official protected by qualified immunity may be held personally liable for an
allegedly unlawful official action generally turns on the 'objective reasonableness of the
action.'") (citation omitted); *Davis v. Scherer*, 468 U.S. 183, 190, 104 S. Ct. 3012 (1984) ("Even
defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that
protects them from liability for damages unless it is further demonstrated that their conduct was
unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993)
(qualified immunity protects defendants "even where the rights were clearly established, if it was
objectively reasonable for defendants to believe that their acts did not violate those rights").

[8]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y.
1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[9]     *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S. Ct. 534 (1991) ("The
qualified immunity standard gives ample room for mistaken judgments by protecting all but the
plainly incompetent or those who knowingly violate the law.") (internal quotation marks and
citation omitted).

## III.   ANALYSIS

### A.   Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

#### 1.   Whether Plaintiff's Claims Against Defendant John O'Neill in His Individual Capacity Should Be Dismissed for Failure to Allege Facts Plausibly Suggesting His Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (*See* Dkt. No. 19-28, at 24-25 [Defs.' Mem. of Law].)  The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal.  *See, supra,* Part II.B. of this Decision and Order.  Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify Defendant O'Neill's involvement in any of the circumstances underlying his claims.  *See Vogeler v. Colbath*, No. 04-CV-6071, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege . . . the personal involvement of the Defendant in the actions underlying their claim." ).

For all of these alternative reasons, Plaintiff's claims against Defendant John O'Neill in his individual capacity are dismissed.

#### 2.   Whether Plaintiff's Claims Against Defendants in Their Official Capacities Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (*See* Dkt. No. 19-28, at 19-20 [Defs.' Mem. of Law].)  The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part II.B. of this Decision and Order. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by Defendants' municipal employer necessary to hold the Defendants liable in their official capacities for Plaintiff's injuries. To the extent Defendants are named in their official capacities, their municipal employer, Essex County, is the real party in interest. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099 (1985) ("a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). As indicated above in Part II.C.1. of this Decision and Order, a municipality, such as Essex County, may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). Here, Plaintiff has failed to allege the existence of any policy, custom, or failure to train, as a basis for his § 1983 claims. Accordingly, because Plaintiff has failed to state a basis for the liability of Essex County on any of his claims, all claims against Defendants in their official capacities must be dismissed.

For all of these alternative reasons, Plaintiff's claims against the Defendants in their official capacities are dismissed.

### 3. Whether Plaintiff's Claim of False Imprisonment Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law. (*See* Dkt. No. 19-28, at 16-17 [Defs.' Mem. of Law].) The Court would add only the following analysis.

First, Defendants' argument that Plaintiff's § 1983 false imprisonment claim is barred by the statute of limitations is not supported by the law in this Circuit requiring the Court to deem Plaintiff's complaint filed on the date it was delivered to prison officials for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). In response to Defendants' motion, Plaintiff contends that he signed his Complaint on May 18, 2011, two days before the statute of limitations on his false imprisonment claim would expire. Further, Plaintiff explains that, because he is in jail, he deposited his Complaint in the mail box at the Essex County Jail. Construing these allegations with the utmost of liberality, the Court interprets Plaintiff's allegations to state that he delivered his Complaint to officials at the Essex County Jail on May 18, 2011. Accordingly, Plaintiff's false imprisonment claim is not time barred.

Defendants argue in the alternative that Plaintiff fails to state a claim for false imprisonment because Defendant Letson's actions underlying the claim were warranted and Plaintiff fails to allege that any of the remaining Defendants were involved in those actions. Defendants further argue that Plaintiff's allegations that (1) he requested that Letson leave several times, but Letson refused, and (2) Plaintiff tried to leave his home with H and N but was threatened with arrest, do not sufficiently allege a claim for false imprisonment.

To be sure, Plaintiff alleges enough facts to plausibly state that (1) Letson intended to confine the Plaintiff and his sons, (2) Plaintiff was conscious of the confinement, and (3) Plaintiff did not consent to the confinement. Whether Plaintiff has plausibly alleged that the confinement was not otherwise privileged is a closer question.

In his Complaint, Plaintiff alleges that Letson was at Plaintiff's home to remove H and N and place them in foster care. Plaintiff further alleges that Letson's grounds for the removal was "the domestic incident [two] days prior[,]" which Letson referred to as "an emergency situation." (Dkt. No. 1, at 5 [Compl.].) Such a removal would be privileged where there was parental consent, a court order, or where an emergency situation existed. *See Southerland*, 680 F.3d at 149 (citing *Tenenbaum*, 193 F.3d at 593-94). Here, Plaintiff clearly alleges that he did not consent to the removal and there are no factual allegations from the Plaintiff, nor any facts of which the Court takes judicial notice, to infer that Letson had a court order. Therefore, Letson's grounds for being present at Plaintiff's home would be privileged if an emergency existed. Where removal of the children is necessary to prevent an imminent danger to their life or health, such that there is not enough time to obtain a court order, the removal is privileged. *See id.*; *Fowler v. Robinson*, No. 94-CV-836, 1996 WL 67994, 10 -11 (N.D.N.Y. Feb. 15, 1996).

Plaintiff argues that pursuant to *Nicholson v. Scoppetta*, 820 N.E.2d 840, 3 N.Y.3d 357, 787 N.Y.S.2d 196 (N.Y. 2004), no emergency could exist based on H and N witnessing a domestic violence incident, since that does not even constitute grounds for a finding of neglect under New York law. To be sure, the New York Court of Appeals in *Nicholson*, on certification of a question by the United States Court of Appeals for the Second Circuit, held that evidence that a child witnessed domestic violence against his or her caretaker is insufficient, standing alone, to satisfy the statutory definition of neglect. *See id.* According to Plaintiff's arrest records, there was evidence that H and N witnessed Plaintiff striking Korrin with his open hand several times, resulting in a cut across Korrin's nose and swelling of her forehead above the eye. In addition, the arrest records reflect that alcohol, and possibly narcotics, were involved. Accordingly, the circumstance underlying the Court of Appeals ruling in *Nicholson*, which is

25

where a child has witnessed domestic violence, without more, is not present here. Here, the additional factor of alcohol and possible drug use was present. Therefore, there are enough facts before the Court, both alleged by Plaintiff in his Complaint and in documents submitted by Plaintiff, of which the Court may take judicial notice, in order to conclude that Letson had reasonable grounds to believe that Plaintiff was neglecting H and N. It is questionable, however, whether that was enough to support a conclusion by Letson that an emergency existed, especially given that the arrest happened one day prior. Nonetheless, Plaintiff's allegation that the removal was not privileged fails for another reason.

Plaintiff alleges both that H and N were removed from his custody by the Family Court the next day, and that the Family Court eventually found that Plaintiff had neglected H and N. Accordingly, Plaintiff cannot state a claim for false imprisonment. Where the alleged grounds for removal were eventually sanctioned by court order, plaintiff cannot allege that the removal was not privileged because a finding of a lack of privilege by this Court would essentially invalidate the order of the Family Court. *See Cruz v. Reiner*, No. 11-CV-2131, 2011 WL 6204101, at *2 (E.D.N.Y. Dec. 12, 2011) (*pro se* plaintiff's false imprisonment claim is dismissed where he was convicted of the crime for which he was arrested) (citing *Wilkinson v. Dotson*. 544 U.S. 74, 81-82, 125 S. Ct. 1242 (2005); *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364 (1994); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986); *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 407-08 (S.D.N.Y. 2007).

For this reason, Plaintiff's false imprisonment claim against Defendants is dismissed.

### 4. Whether Plaintiff's Claim That Defendants Violated His and His Children's Right to Procedural Due Process Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (*See* Dkt. No. 19-28, at 20-22 [Defs.' Mem. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part II.B. of this Decision and Order. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a violation of his or his children's procedural due process rights. Plaintiff alleges that his children were not removed from their home on May 19, 2008, but were removed the following day by court order. Accordingly, Plaintiff alleges that judicial process was accorded both him and his children before his children were removed from his custody in accordance with the Fourteenth Amendment.

For all of these reasons, Plaintiff's claims against Defendants for violation of his and his children's rights to procedural due process are dismissed.

### 5. Whether Plaintiff's Claim That Defendants Violated His Right to Substantive Due Process Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (*See* Dkt. No. 19-28, at 22-23 [Defs.' Mem. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part II.B. of this

Decision and Order. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a violation of his substantive due process right. As indicated in Part II.C.1.b.ii. of this Decision and Order, a parent's substantive due process claim can only be sustained if the removal of the child would have been prohibited by the Constitution even had the parent been given all the procedural protections to which he was entitled. In other words, while a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of the removal itself. Here, in support of his claim, Plaintiff alleges that Defendants petitioned the court for removal of H and N from his custody without grounds to do so. This allegation is belied by other allegations and facts gleaned from documents, of which the Court takes judicial notice, that the removal of H and N from Plaintiff's custody was pursuant to an order of the Family Court based on, among other things, evidence that Plaintiff had subjected H and N to witnessing a domestic violence incident and that he had done so while having abused alcohol in their presence. Plaintiff has failed to demonstrate that the Defendants' action depriving him of custody was at all shocking, arbitrary, or egregious, and consequently fails to state a claim that his substantive rights under the Due Process Clause were violated.

For all of these reasons, Plaintiff's claims against Defendants for violation of his right to substantive due process are dismissed.

### 6. Whether Plaintiff's Claim That Defendants Violated His Right to Equal Protection Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (*See* Dkt. No. 19-28, at 23 [Defs.' Mem. of Law].) The Court would add only the following brief point.

Plaintiff alleges that Defendant Marie "and other employees of the Department of Social Services" treated him differently because he is a man. In support of this allegation, Plaintiff alleges that Defendant Marie "took the side of Korrin from the start" and requested that custody of H be granted to H's mother, "Jaime." (Dkt. No. 1, at 6, 8 [Compl.].) In addition, Plaintiff alleges that Defendant Marie contacted police twice in order to advise them that Plaintiff violated an order of protection against Korrin, after having been notified of "incident[s]" that occurred between Plaintiff and Korrin, resulting in Plaintiff being arrested. (*See id.*, at 7-9.) Further, in his response to Defendants' motion to dismiss, Plaintiff argues that "Defendant Marie always had an excuse to keep my sons out of my custody or even to give me 'unsupervised' visitation with my sons. Sometimes the excuse was that I'd been arrested, however, on at least two occasions Defendant Marie was responsible for having me arrested." (Dkt. No. 25, at ¶¶ 30-31 [Pl.'s Resp. to Defs.' Mot. to Dismiss].).

Even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a violation of his right to equal protection. As indicated in Part II.C.1.c. of this Decision and Order, in order to state an equal protection claim, a plaintiff must allege that similarly situated persons were treated differently. Here, Plaintiff fails to allege facts supporting an inference that other persons similarly situated were treated differently. Moreover, Plaintiff fails to allege facts plausibly suggesting that Defendant Marie's treatment of him was not supported by a rational basis.

For this reason, Plaintiff's claims against Defendants for violation of his right to equal protection are dismissed.

### 7. Whether Plaintiff's Claim of Coercion Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated by Defendants in their memorandum of law. (*See* Dkt. No. 19-28, at 22 [Defs.' Mem. of Law].) The Court would add only three brief points.

Plaintiff alleges that he was coerced into making a general admission of neglect in violation of his rights under the Fourteenth Amendment. In support of his allegation, Plaintiff alleges that he was coerced by "[his] attorney, [Defendant] Gallant, and [Defendant] Marie" into making a general admission to neglecting H and N. (Dkt. No. 1, at 6 [Compl.]) Plaintiff further explains that "[j]ail time being held over my head for non compliance of a court order was to be relieved by making this admission. The disposition was [one] year supervision by [Essex County Department of Social Services]." (*Id.*)

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part II.B. of this Decision and Order. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a violation of his rights under the Constitution based upon the alleged coercion of his general admission of neglect.

Pursuant to the Order of Family Court Judge Richard B. Meyer on August 21, 2008, Plaintiff's consent to the entry of an order of fact-finding without an admission was accepted, and the court found by a preponderance of the evidence that Plaintiff committed acts constituting

child neglect of H and N.  Moreover, the court acknowledged that Plaintiff appeared with counsel, and that Plaintiff voluntarily, intelligently and knowingly consented to the entry of an order of a finding of neglect without admission.  (*See* Ex. L to Aff. of Michael Gallant, Dkt. No. 19-4.)  This Court takes judicial notice of the order of Family Court Judge Meyer.  Accordingly, Plaintiff fails to allege facts plausibly suggesting that Defendants coerced him into making a general admission of neglect in violation of his rights under the Constitution.

For these reasons, Plaintiff's claims against Defendants for coercion of an admission in violation of his rights under the Fourteenth Amendment are dismissed.

### 8.    Whether Plaintiff Has Alleged a Claim of Malicious Prosecution Against the Remaining Defendants

Defendants argue that Plaintiff's claim of malicious prosecution should be dismissed. Plaintiff fails to oppose Defendants' motion in this regard.  However, read with the utmost of special liberality, Plaintiff's Complaint asserts a malicious prosecution claim solely against Jack Delehanty, who is no longer a Defendant in this action.  (*See* Dkt. No. 28.)  To the extent Plaintiff asserts a claim for malicious prosecution against any of the remaining Defendants, it is dismissed for the following three reasons.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal.  *See, supra,* Part II.B. of this Decision and Order.  Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting that any of the Defendants acted in such a way as to be liable to Plaintiff on a § 1983 claim for malicious prosecution for the reasons set

forth by Defendants in their memorandum of law. (*See* Dkt. No. 19-28, at 17-19 [ Defs.' Mem. of Law].)

For these reasons, any claim by Plaintiff against the Defendants for malicious prosecution is dismissed.

### 9.    Whether Plaintiff's Conspiracy Claims Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their reply memorandum of law. (*See* Dkt. No. 30, at 3 [Defs.' Reply Mem. of Law].) The Court would add only the following three brief points.

Even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a conspiracy to violate his rights under the Constitution. As indicated in Part II.C.2. of this Decision and Order, a violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. Moreover, vague and conclusory allegations that Defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either § 1983 or § 1985(3). Finally, under the intra-corporate conspiracy doctrine, which applies to both §1983 and § 1985 conspiracy claims, officers, agents, and employees of a single municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other.

First, all of Plaintiff's § 1983 claims are dismissed from this action. Second, even read with the utmost of special liberality, Plaintiff fails to allege any facts plausibly suggesting a conspiracy between one or more Defendants to violate his rights under the Constitution. Finally, even if Plaintiff had plausibly alleged any of his civil rights claims and that two or more of the Defendants engaged in a conspiracy to violate that right or those rights, Plaintiff's claim fails under the intra-corporate conspiracy doctrine because all of the Defendants are employed by the

County of Essex.

For these reasons, Plaintiff's claims against Defendants for conspiracy to violate his constitutional rights under §§ 1983 and/or 1985 are dismissed**.**

> **10.  Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected From Liability As a Matter of Law by Statutory, Qualified or Absolute Immunity**

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated by Defendants in their memorandum of law.  (*See* Dkt. No. 19-28, at 13-16 [Defs.' Mem. of Law].)  The Court would add only the following brief point.

As indicated above in Part II.D.1.c. of this Decision and Order, under federal law, a government official is entitled to qualified immunity where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotations and other citations omitted).  Here, based on Plaintiff's own factual allegations, as well as documents outside the Complaint of which the Court takes judicial notice, it is plausible that government officials of reasonable competence could disagree as to whether Defendants' actions were unlawful, given the evidence of neglect.

For this reason, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

> **B.  Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at *1. As explained above in Part II.A. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se*

civil rights plaintiffs must follow.

Here, the referenced defects in Plaintiff's Complaint are substantive, not merely formal. Based on the allegations in the Complaint as well as the documents, of which the Court takes judicial notice, Plaintiff cannot as a matter of law plausibly allege his claims against Defendants. Accordingly, granting Plaintiff an opportunity to amend his Complaint would be futile.

For this reason, Plaintiff's Complaint is dismissed with prejudice without further Order of the Court.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 19) is <u>**GRANTED**</u> **in its entirety**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is <u>**DISMISSED**</u> with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment against Plaintiff accordingly.

Dated  March 7, 2013
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge